O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No.  CR 09-138 CAS |
| Plaintiff(s), ) ) | |
| vs. ) ) | FINDINGS OF FACT AND CONCLUSIONS OF LAW |
| BRIAN LEE HANSON, JR., ) ) | |
| ) ) | |
| Defendant(s). ) ) | |
| _____ ) | |

This case was tried to the Court, jury trial having been knowingly waived by defendant Brian Lee Hanson, Jr., on July 28, 2009.  Assistant United States Attorney Yvonne L. Garcia appeared for the United States and Deputy Public Defender Myra Sun appeared for defendant.  The Indictment charges defendant with four counts of access device fraud, in violation of 18 U.S.C. § 1029(a)(2), and two counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1).  Having carefully considered the evidence, the Court finds and concludes as follows:

## FINDINGS OF FACT

1. Boston Coach is a company that provides ground transportation and arranges for ground transportation with various limousine companies throughout the nation ("affiliates") for its clients. Clients pay Boston Coach directly for any services provided by Boston Coach or its affiliates.

2. On or about June 8, 2007, defendant placed a telephone call to Boston Coach to make a reservation for limousine services. The reservation was reservation number 06097547 for limousine pick-up on June 9, 2007, at 11:00 a.m., from 16828 Robin Lane, Victorville, California, which is in San Bernardino County. Defendant knowingly used American Express credit card number xxxx-xxxxx06-12010 ("Amex account -2010"), which was issued to "Clark Hayes," to pay for the limousine. Defendant falsely claimed that he was Clark Hayes. The total cost for those limousine services was $1,863.68.

3. On or about June 9, 2007, defendant placed a telephone call to Boston Coach to make a reservation for limousine services. The reservation was reservation number 06105507 for limousine pick-up on June 10, 2007, at 8:30 a.m., from 16828 Robin Lane, Victorville, California. Defendant knowingly used Amex account -2010, issued to "Clark Hayes," to pay for the limousine. Defendant falsely claimed that he was Clark Hayes. The total cost for those limousine services was $1,980.16.

4. On or about June 15, 2007, defendant placed a telephone call to Boston Coach to make a reservation for limousine services. The reservation was reservation number 06168823 for limousine pick-up on June 16, 2007, at 10:00 a.m., from 11443 Hesperia Road, Hesperia, California, which is in San Bernardino County. Defendant knowingly used Amex account -2010, issued to "Clark Hayes," to pay for the limousine. Defendant falsely claimed that he was Clark Hayes. The cost for those limousine services was $3,136.72.

5. On or about June 16, 2007, defendant placed a telephone call to Boston Coach to make two reservations for limousine services. The total cost for those

limousine services was $4,902.40.

    a.    The first reservation was reservation number 06173468 for limousine pick-up on June 17, 2007, from 11443 Hesperia Road, Hesperia, California. Defendant knowingly used Amex account -2010, issued to "Clark Hayes," to pay for the limousine. Defendant falsely claimed that he was Clark Hayes. The cost for those limousine services was $2,747.52.

    b.    The second reservation was reservation number 06173574 for limousine pick-up on June 17, 2007, from 16828 Robin Lane, Victorville, California. Once again, defendant knowingly used Amex account -2010, issued to "Clark Hayes," to pay for the limousine and falsely claimed that he was Clark Hayes. The cost for those limousine services was approximately $2,154.88.

    c.    The two drivers who provided limousine services for defendant on June 17, 2007, for reservation numbers 06173468 and 06173574, were Darrick Hayes and David Konsbruck from Boston Coach affiliate Cardiff Limousine and Transportation. They drove defendant and several of defendant's family members to Medieval Times, an amusement park, in Buena Park, California. Darrick Hayes and David Konsbruck took a photograph with defendant and his family at Medieval Times.

    6.    Sometime in July 2007, supervisors at Boston Coach noted irregularities in the foregoing transactions, and directed the limousine driver, David Konsbruck, to request a credit card and identification from defendant. Defendant presented a credit card bearing the name of Brian Lee Hanson, Jr., which the driver utilized for making the limousine charge. Thereafter, in November 2007, representatives of the fraud department of Boston Coach notified U.S. Postal Inspection of the suspected fraudulent activity. United States Postal Inspector Eve Tamburri was assigned to the case, and commenced an investigation.

    7.    Clark Hayes is an actual person who lives in Ohio. He is the owner of Applied Technology Systems, Inc., ("Applied") and is authorized to use its American Express account -2010 by reason of his employment by Applied, the corporate entity to

which the master corporate credit card is issued.  Separate accounts are authorized for use by Applied's employees, one of whom is Clark Hayes.  American Express bills the corporate charges and those of its employees to Applied.  Clark Hayes has never met defendant, or defendant's ex-boyfriend, Kendrick Embree. Clark Hayes did not provide defendant or Mr. Embree with permission to use Amex account -2010.

8. Defendant was never authorized to use Amex account -2010.

9. At the time defendant made the reservations referenced in paragraphs 2, 3, 4, and 5, above, defendant knew that Amex account -2010 belonged to a real person named Clark Hayes. Defendant also knew that he was not authorized to use Amex account -2010 when he made those reservations, and acted without lawful authority by charging the reservations to that account.

10. Defendant provided Amex account -2010 to Boston Coach with the intent to defraud.

11. Defendant's use of Amex account -2010 affected interstate commerce.

12. On February 26, 2009, U.S. Postal Inspector Eve Tamburri arrested defendant and read him his Miranda rights.  Defendant stated that he understood his Miranda rights, knowingly and voluntarily waived those rights, and agreed to speak with Inspector Tamburri. Defendant signed a written Miranda waiver, namely, U.S. Postal Inspection Service IS form 1067, Warning and Waiver of Rights. During the interview, defendant made the following statements, among others:

   a. Defendant obtained the credit card number, name, and expiration date for Amex account -2010 from his ex-boyfriend, Kendrick Embree. Defendant then used "yellowpages.com" online to obtain additional information about the real Clark Hayes, who resides in Columbus, Ohio.

   b. Defendant knew the information he obtained belonged to an actual person named Clark Hayes.

   c. Defendant called Boston Coach and set up an account with the company in the name of Clark Hayes.

   d.   Defendant spoke to the Boston Coach operators so often that they knew him by his voice and/or name.

   e.   Defendant did not know the rates for the limousine rides he ordered because he knew that he would not be paying for the charges.

   f.   Defendant also used Amex account -2010 to purchase airline tickets and amusement park tickets.

   g.   Defendant often requested Cardiff Limousine and Transportation driver Darrick Hayes.

   13.   In addition, defendant provided a written statement, in which he wrote, among other things, that "[u]pon booking the car on Mr. Clark Hayes credit card [he] realized how easy it was and later got greedy."

   14.   To the extent necessary, each of these findings of fact may be deemed to be a conclusion of law.

## CONCLUSIONS OF LAW

**1.   Counts 1 through 4:  18 U.S.C. § 1029(a)(2): Access Device Fraud**

The elements of the crime of access device fraud, in violation of 18 U.S.C. § 1029(a)(2), are: (1) defendant knowingly used, or trafficked in, an unauthorized access device at any time during a one-year period; (2) by using, or trafficking in, the unauthorized access device during that period, defendant obtained things of value, their value together totaling $1,000 or more during that period; (3) defendant acted with the intent to defraud; and (4) defendant's conduct in some way affected interstate or foreign commerce.  See Ninth Cir. Model Crim. Jury Instr. No. 8.69 (2003).  An "access device" means "any card, plate, code, account number . . . or other means of account access that can be used, alone or in conjunction with another access device, to obtain money, goods, services, or any other thing of value, or that can be used to initiate a transfer of funds (other than a transfer originated solely by paper instrument)." 18 U.S.C. § 1029(e)(1).  An access device is "unauthorized" if it "is lost, stolen, expired,

revoked, canceled, or obtained with intent to defraud." 18 U.S.C. § 1029(e)(3).

Defendant admits the matters charged in Counts 1 through 4 of the indictment. Def. Mem. at 3. The Court concludes that the government has established beyond a reasonable doubt that defendant committed access device fraud in violation of 18 U.S.C. § 1029(a)(2), in that he knowingly used credit card information, i.e., an access device, of Clark Hayes without authorization of Clark Hayes or Applied during a one-year period, and in using such access device, defendant obtained things of value, totaling $1000 or more during that period, and that defendant acted with intent to defraud. The Court further concludes that defendant's conduct affected interstate commerce. As a result the Court finds defendant guilty on Counts 1 through 4 of the Indictment.

### 2.     Counts 5 and 6:  18 U.S.C. § 1028A(a)(1): Aggravated Identity Theft

The elements of the crime of aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1), are: (1) defendant knowingly transferred, possessed, or used a means of identification of another person; (2) defendant knew that the means of identification belonged to another person; (3) defendant acted without lawful authority; and (4) defendant did so during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), which includes a violation of 18 U.S.C. § 1029(a)(2). See 18 U.S.C. § 1028A(a)(1); United States v. Flores-Figueroa, 129 S. Ct. 1886 (2009) (holding that the government must prove defendant knew that the identification in question belonged to an actual person, as opposed to a fictitious one); United States v. Miranda-Lopez, 532 F.3d 1034, 1039-40 (9th Cir. 2008) (same).

The term "means of identification" is defined as any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including any name, social security number, date of birth, official State or government issued driver's license or identification number. 18 U.S.C. § 1028(d)(7)(A).

The term "person" in section 1028A includes living and deceased victims. United

States v. Mendoza-Gonzalez, 520 F.3d 912, 918 n.4 (8th Cir. 2008) ("Section 1028A(a)(1) imposes no requirement that the Government prove that the person whose means of identification was used be alive . . . ."); United States v. Kowal, 527 F.3d 741, 746-47 (8th Cir. 2008), affirming United States v. Kowal, 486 F. Supp. 2d 923, 934 (N.D. Iowa 2007) ("The court holds that the term 'person' in § 1028A includes all human beings, regardless of whether they are living at the time their identity is stolen and used."); United States v. Jimenez, 507 F.3d 13, 22 (1st Cir. 2007) ("[T]he natural reading of the word 'person' in the phrase 'means of identification of another person' includes persons deceased."); see also United States v. Maciel-Alcala, 2008 WL 4369299, at *3 (C.D. Cal. Sept. 18, 2008) ("[T]he government does not need to prove that the defendant knew that the victim was a living person."); United States v. Shain, 2008 WL 2940641, at *4 (W.D. Wash. July 24, 2008) ("The surrounding language and the statute's structure also support the conclusion that 'person,' for purposes of Aggravated Identity Theft, includes a deceased person.").

Defendant argues that he cannot be convicted of violating section 1028A because he used a credit card linked to a corporate account, as opposed to a personal account. He claims that he did not use a means of identification of another person because Amex card number -2010 linked to an account that did not belong to victim Clark Hayes, but rather belonged to Hayes' employer, Applied.

The term "means of identification" is defined as:

[A]ny name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including any –

(A) name, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number;

. . .

(D) telecommunication identifying information or access device (as

defined in section 1029(e)).

18 U.S.C. § 1028(d)(7). An access device includes any "card . . . [or] account number . . . that can be used, alone or in conjunction with another access device, to obtain money, goods, services, or any other thing of value." 18 U.S.C. § 1029(e)(1).

As the statutory definition makes clear, a name alone is a "means of identification." See also United States v. Blixt, 548 F.3d 882, 886 (9th Cir. 2008) (holding that "forging another's signature constitutes the use of that person's name and thus qualifies as a 'means of identification'").[1] In this case, the evidence showed that on each of the dates charged in counts one through four of the indictment, defendant called Boston Coach, used the name "Clark Hayes," requested limousine services, and provided Amex card number -2010 to pay for those services. Moreover, as Cardiff Limousine driver David Konsbruck testified, he drove defendant on numerous occasions, knew defendant as Clark Hayes, and received his directions from defendant. Defendant's use of victim Clark Hayes' name for defendant's own economic gain and to further his access device fraud constitutes the use of a "means of identification" and is precisely the type of conduct Congress sought to proscribe. Id.

The fact that the funds defendant used to pay for the limousine services were ultimately taken from a corporate credit account is immaterial to the section 1028A charges because the means of identification defendant used was the name Clark Hayes, which specifically identified the victim Clark Hayes, not his employer Applied Tech. See United States v. Cook, 2009 WL 1911756, *2 (11th Cir. 2009) (affirming section 1028A conviction where defendant misappropriated signatures of payors who were authorized to draw upon a corporate account because such conduct was use of those payors' means of identification) (unpublished); United States v. Johnson, 261 Fed. Appx. 611, 614 (4th Cir. 2008) (holding that use of victim's name as signatory on counterfeit corporate checks was use of a specific individual's means of identification)

---

[1] The Court finds defendant's attempt to distinguish Blixt unavailing.

(unpublished). Indeed, section 1028A does not require that the government prove that the victim whose means of identification was used suffered harm to their credit history or an actual financial loss in order to convict a defendant of violating section 1028A.

The evidence at trial further established that, on each of the dates set forth in counts one through four of the indictment, defendant not only used Clark Hayes' name to book limousine reservations with Boston Coach, he also used Clark Hayes' unique Amex card number -2010 to pay for those limousine services. Natalie Morgan, a Special Agent with American Express, testified that an American Express corporate credit account is assigned a particular number, in this case, Amex account -1004. Employees who are authorized to use that corporate account, called "supplemental account holders," are each assigned their own unique credit card number, which links to the master corporate account. Clark Hayes, as CEO of Applied, was assigned Amex card number -2010. No other Applied employee was assigned or used that card number. Amex card number -2010 is an access device because it is a "card . . . [or] account number. . . that can be used, alone or in conjunction with another access device, to obtain money, goods, services, or any other thing of value." 18 U.S.C. § 1029(e)(1). Thus, Amex card number -2010 is an access device that serves as the means of identification of another person.

3.   To the extent necessary, each of these conclusions of law may be deemed to be a finding of fact.

For the foregoing reasons, the Court finds defendant guilty on Counts 5 and 6.

IT IS SO ORDERED.

Dated:   August 6, 2009

_____
CHRISTINA A. SNYDER
UNITED STATES DISTRICT JUDGE